IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **Openwave Systems, Inc.,**<br><br>Plaintiff,<br><br>v.<br><br>**Apple Inc., Research In Motion Ltd. and Research In Motion Corp.,**<br><br>Defendants. | Civil Action No. 11-765-RGA |

MEMORANDUM OPINION

Rodger D. Smith, II, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Theodore Stevenson, III, Esq. (argued), McKool Smith, P.C., Dallas, TX; John Shumaker, Esq., McKool Smith, P.C., Austin, TX, attorneys for Plaintiff.

Mary Matterer, Esq., Morris James LLP, Wilmington, DE; Y. Ernest Hsin, Esq. (argued), Gibson, Dunn & Crutcher, Palo Alto, CA; Stuart M. Rosenberg, Esq., Gibson, Dunn & Crutcher, Palo Alto, CA, attorneys for Defendant Apple Inc.

David E. Moore, Esq., Potter, Anderson & Corroon LLP, Wilmington, DE; Morgan Chu, Esq. (argued), Irell & Manella LLP, Los Angeles, CA; Alan J. Heinrich, Esq., Irell & Manella LLP, Los Angeles, CA, attorneys for Defendants Research in Motion Ltd. and Research in Motion Corp.

February 19, 2014


ANDREWS, U.S. District Judge:

Pending before this Court is the issue of claim construction of three disputed terms found in U.S. Patent No. 6,405,037, U.S. Patent No. 6,430,409, and U.S. Patent No. 6,625,447.

## I. BACKGROUND

On August 31, 2011, Openwave Systems, Inc, now known as Unwired Planet ("Plaintiff"), filed a patent infringement action (No. 11-765 D.I. 1) against Apple Inc., Research in Motion Ltd., and Research in Motion Corp. ("Defendants"). The Court has considered the Parties' Claim Construction Briefs (D.I. 36, 44, 56, 58) and heard oral argument on November 25, 2013. (D.I. 61).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a matter of law, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotations and citations omitted).

Furthermore, "the words of a claim are generally given their ordinary and customary

1

meaning ... [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

A court may consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," in order to assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works. *Id.* at 1317-19 (internal quotation marks and citations omitted). However, extrinsic evidence is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

Finally, "[a] claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

### III. CONSTRUCTION OF DISPUTED TERMS

There are three terms at issue here, "mobile device" in the '037 patent, "wireless mobile

2

telephone" in the '409 patent, and "two way communication device" in the '409 and '447 patents. The parties agree that these terms should be construed as a group, and for convenience will be referred to as "mobile device." (D.I. 36 at 7). There is only one issue, whether the terms are to be given their plain and ordinary meaning, as Plaintiff urges, or whether the patents disclaim mobile devices containing "computer modules," as Defendants contend. I note that the construction of these terms has been previously litigated in the International Trade Commission ("ITC"). There, the Administrative Law Judge ("ALJ") sided with Defendants, construing "mobile device" as a "portable wireless two-way communication device that does not contain a computer module." (D.I. 38-5 at 54). While not binding, I find the ALJ's reasoning persuasive, and I construe the terms in the same fashion.

    The patents at issue are all continuations of U.S. Patent No. 5,808,415, which was filed on December 11, 1995.[1] Generally, the patents teach a mobile ecosystem in which remote servers deliver applications to wireless mobile devices. At the time period in which the patents were filed, mobile devices could only run the applications which were burned into their ROMs at the factory or which were present in a ROM card. ('409 patent 2:25-30). In order to run different applications, the ROM would need to be re-burned or a new memory card installed. The patents teach using a client module to communicate with a server in order to allow mobile devices to access more applications. ('409 patent 3:60-67). This results in an open platform, because applications are not tied to particular devices or features of the network. ('409 patent 3:60-4:33). Essentially, this is a server side solution which allows mobile devices to leverage the greater processing power present on servers. In fact, the goal of the invention was to overcome the limitations present in prior art devices which combined a computer module with a wireless

---

[1] The patents share a common specification. (D.I. 36 at 11).

communication module. ('409 patent 3:30-33).

The present issue is whether the claims cover mobile devices which contain a computer module, or whether the specification disclaimed embodiments containing a computer module. As an initial matter, Plaintiff objects to the ALJ's claim construction because it reads out a preferred embodiment, namely a mobile device containing a microcontroller. (D.I. 36 at 9). This argument is without merit. The patents themselves distinguish between a microcontroller and a computer module. For instance, the '409 patent describes a cellular telephone which "utilizes only a microcontroller...and does not require[] a separate computer module as in the prior art." ('409 patent at 15:60-63). While a microcontroller may indeed be a type of computer module, as pointed out by Plaintiff, *see* D.I. 36 at 10, the specification distinguishes between the two. The ALJ's construction, when read in light of the specification, makes clear that only computer modules, not including microcontrollers, are outside the scope of the claims. The ALJ's construction therefore does not read out the preferred embodiment of the invention.

Plaintiff's main argument is that the specification does not disclaim mobile devices having a computer module because the statements in the specification are not clear nor unambiguous. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("[T]o disavow claim scope, the specification must contain expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.") (internal citation and quotation marks omitted). Again, this argument fails to carry the day. "Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,

4

242 F.3d 1337, 1341 (Fed. Cir. 2001).

Here, the specification makes clear that the invention does not encompass mobile devices containing computer modules. The following excerpts exemplify that such combinations are disfavored:

> Fundamental design and cost problems arising directly from the approach taken by the designers of these intelligent communication devices have limited widespread market acceptance of these devices. The combination of a wireless communication module with a computing module leads to a device that is too bulky, too expensive, and too inflexible to address the market requirements. ('409 patent at 1:52-60).
>
> According to the principles of this invention, the prior art limitations of combining a computer module with a wireless communication module have been overcome. In particular, a two-way data communication device of this invention, such as a cellular telephone, two-way pager, or telephone includes a client module that communicates with a server computer over a two-way data communication network. ('409 patent at 3:30-37).
>
> The client module of this invention is lightweight, and thus requires only lightweight resources in a two-way data communication device. Consequently, the client module can use existing resources in such a device and therefore does not add to the cost of the two-way data communication device. ('409 patent at 6:27-33).
>
> The client module is small…and requires only low processing power congruent with the memory chips and built-in microcontrollers in two-way data communication devices…Thus, unlike the prior art attempts at an intelligent telephone, the cost, size, and battery life of either cellular telephones, two-way pagers, or telephones that incorporate this invention are not adversely affected. ('409 patent at 9:9-18).

While Plaintiff maintains that these excerpts merely tout the advantages of the invention, the Court interprets these statements as clear disparagement of the prior art. Such "repeated derogatory statements…reasonably may be viewed as a disavowal of that subject matter from the scope of the [p]atent's claims." *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1372 (Fed. Cir. 2012) (citing *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1319 (Fed. Cir. 2006)). Lastly, and most tellingly, the patent itself specifies that, "cellular telephone **100** is not a combination of a computer module and a wireless communication module

as in prior art attempts to create an intelligent telephone" ('409 patent at 14:45-50), and that, "cellular telephone **100** utilizes only a microcontroller found in telephone **100** and does not require[] a separate computer module as in the prior art." ('409 patent at 15:60-63).

Lastly, Plaintiff argues that if the Court finds a surrender of subject matter, the following construction should be adopted: "a portable wireless two-way communication device that does not require a separate computer module but uses the available circuitry and software resources of said two-way communication device for voice and data operations." (D.I. 56 at 5). It appears that this construction is an attempt to include devices where the computer module is integrated with the wireless communication module. The fact that now, almost 15 years later, circuit design has advanced to the point where computer modules may be integrated with wireless communication modules is irrelevant. The patents disclaim mobile devices containing computer modules. I construe the term "mobile device"[2] as a "portable wireless two-way communication device that does not contain a computer module."[3]

## IV. CONCLUSION

Within five days the parties should submit a proposed order, consistent with this opinion, suitable for submission to the jury.

---

[2] As well as the other "mobile device" terms.
[3] I make clear that this construction does not read out embodiments including microcontrollers.

6